**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**J. JEFFREYS MERRYMAN, JR.**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KENNETH W. WAGENER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 34A05-1202-PC-47 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT
The Honorable William C. Menges, Jr., Judge
Cause No. 34D01-0701-PC-65

**August 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Kenneth Wagener appeals the post-conviction court's denial of his petition for post-conviction relief. He raises one issue, which we restate as whether the post-conviction court erred in concluding that he did not receive ineffective assistance of trial counsel. Concluding that the post-conviction court did not reversibly err, we affirm.

## Facts and Procedural History

Wagener was convicted of murder, and we affirmed his conviction on direct appeal in 2006. Wagener v. State, 855 N.E.2d 1078 (Ind. Ct. App. 2006) (table). The facts underlying his murder conviction follow:

> . . . On September 18, 2004, Dean Miller rode his bicycle to Kenneth Wagener's home. Miller's wife, who is also Wagener's step-daughter, arrived at Wagener's residence, and the three ate pizza, drank beer, and talked. Wagener and Miller began to argue and Wagener got up from his chair and stood over Miller, who was sitting on the couch. When Miller stood up, Wagener attempted to push him back down, and the two began to wrestle. Wagener and Miller fell on the floor, rolled around, and ended up in the kitchen. Miller pinned Wagener to the floor until Miller's wife separated them and Miller went to the living room to calm down while his wife spoke to Wagener. Wagener's glasses were broken in the tussle. Wagener went into his bedroom as Miller and his wife prepared to leave Wagener's home. As Miller and his wife were headed out the front door, Wagener came out of his bedroom with a gun and told them that they were not leaving. When Miller's wife insisted that they were leaving, Wagener fired a shot into the ceiling. The Millers continued out of the house and down the sidewalk to the street. Wagener came out of the house and stood on the porch. When Miller reached the corner of Wagener's property, Wagener shot Miller in the back. Miller died from the gunshot wound.
> Miller's wife attempted to reenter Wagener's house to call 911, but Wagener locked the storm door, requiring Miller's wife to break the door glass, reach in, and unlock the door to enter in order to get the telephone. While Miller's wife called 911, Wagener, still holding the gun, came out of his house, walked to where Miller lay and said, "mother-fucker, I told you not to mess with me." Wagener then turned around and walked back into his house.

Id. at *2-*3 (citation omitted).

Following our decision affirming Wagener's conviction, Wagener sought post-conviction relief. The post-conviction court held a hearing thereon, denied Wagener's petition, and entered findings of fact and conclusions of law:

FINDINGS OF FACT:
***
2. . . . the jury was given possible verdict forms for Murder, Voluntary Manslaughter, and Reckless Homicide.
***
5. At the time of the trial, the case of Eichelbarger v. State, 852 N.E.2d 631 (Ind.App. 2006) had not yet been decided.
6. At the time of the trial, the case of Sanders v. Cotton, 398 F.3d 572 (7th Cir. 2005), had been decided but was unknown to [defense counsel], the Prosecutor, or the Court.
7. Based on Eichelbarger and Sanders the trial court incorrectly instructed the [sic] about the State's burden of proof in regard to "sudden heat" and voluntary manslaughter.
8. The trial court correctly instructed the jury on the definition of "sudden heat" as a condition that may be created by a strong emotion such as anger, rage, sudden resentment, or jealousy.
9. At trial, Wagener testified that he was not angry, he was not enraged, he was not resentful, and he was not jealous. In addition, Wagener had sufficient time to reflect while he attempted to call the police, while he was retrieving his gun, and while Miller was walking away.
***
11. As a matter of trial strategy, [defense counsel] abandoned any effort to persuade the jury to the charge of Voluntary Manslaughter because it was an A felony, subject to punishment almost as serious as Murder, and because Wagener had told the jury that his conduct did not fall within the definition of "sudden heat."
***
CONCLUSIONS OF LAW:
***
3. As a matter of trial strategy, [defense counsel] abandoned any effort to sway the jury to a verdict of Voluntary Manslaughter. Thus, the failure to instruct the jury properly on the State's burden of proof would not have affected the outcome of the trial. Wagener was not prejudiced by his trial counsel's actions.
4. Once a defendant places sudden heat into issue, the State then bears the burden of negating the presence of sudden heat beyond a reasonable doubt. However, based upon Wagener's testimony, sudden heat was not a serious inquiry or issue. Because it was not, Wagener could not be prejudiced by

3

an erroneous jury instruction for Voluntary Manslaughter because the jury could not have found the presence of sudden heat, and thus, could not have reduced his Murder conviction to Voluntary Manslaughter even under a correct instruction.
***

Appendix to Brief of Petitioner-Appellant at 137-40 (footnotes omitted).

Wagener now appeals.[1]

### Discussion and Decision

#### I. Standard of Review

When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail from the denial of postconviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

Overstreet v. State, 877 N.E.2d 144, 151 (Ind. 2007) (citations omitted), cert. denied, 555 U.S. 972 (2008). We "examine[] only the probative evidence and reasonable inferences that support the post-conviction court's determination and do[] not reweigh the evidence or judge the credibility of the witnesses." State v. Holmes, 728 N.E.2d 164, 169 (Ind. 2000), cert. denied, 532 U.S. 1067 (2001). We accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. Id.

---

[1] On direct appeal, Wagener challenged the sufficiency of the evidence to sustain his conviction, the trial court's considerations in sentencing him, and the appropriateness of his sentence. He did not raise the issue of ineffective assistance of trial counsel. Contrary to the general rule which states that a convict waives post-conviction claims which were available but not raised on direct appeal, Wagener's present claim that his trial counsel was ineffective has not been waived. See Woods v. State, 701 N.E.2d 1208, 1220 (Ind. 2008) (holding that a claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in post-conviction proceedings), cert. denied, 528 U.S. 861 (1999).

4

## II. Ineffective Assistance of Trial Counsel

### A. Two-Part Test

Wagener argues the post-conviction court erred in denying his claim of ineffective assistance of counsel. To succeed in contending ineffective assistance of trial counsel, a petitioner must satisfy a two-part test. Kubsch v. State, 934 N.E.2d 1138, 1147 (Ind. 2010) (citing Strickland v. Washington, 466 U.S. 668 (1984)).

> First, a defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as counsel guaranteed to the defendant by the Sixth Amendment. Second, a defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, meaning a trial where the result is reliable. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption.

Id. (quotations and citations omitted).

### B. Jury Instruction

Wagener argues he received ineffective assistance from his trial counsel because his trial counsel tendered and the trial court gave an incorrect jury instruction regarding sudden heat, which Wagener argues led to his improper conviction of murder rather than voluntary manslaughter. "Sudden heat" is "characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." Dearman v. State, 743 N.E.2d 757, 760 (Ind. 2001). Neither anger alone nor words alone

are sufficient provocation to warrant an instruction regarding sudden heat. Suprenant v. State, 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010), trans. denied.

Indiana law states: "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder . . . to voluntary manslaughter." Ind. Code § 35-42-1-3(b). More to the point, sudden heat is not merely an element of the offense of voluntary manslaughter; rather, "once a defendant presents evidence of sudden heat, the State bears the burden of disproving its existence beyond a reasonable doubt." Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002) (emphasis in original).

Wagener contends that the pertinent jury instruction at his trial was an incorrect statement of the law and confused the jury as to who bore the burden of proving or disproving Wagener's sudden heat. The State concedes that the jury instruction was incorrect, but argues this does not establish ineffective assistance of counsel because sudden heat was not a primary issue at trial, and thus the incorrect instruction does not warrant vacating his conviction. Wagener's trial attorney and Wagener himself, the State argues, abandoned whatever mitigating effect sudden heat would have provided and focused on trying to persuade the jury that Wagener lacked the intent to kill, an element of both murder and voluntary manslaughter. Before determining whether the State's argument is supported by the record, we review relevant case law to determine if the legal argument is correct. [2]

_____

[2] Wagener relies upon Eichelberger v. State, 852 N.E.2d 631 (2008), and Sanders v. Cotton, 398 F.3d 572 (7th Cir. 2005). Those two cases focused on the sufficiency of the jury instructions regarding sudden heat as a whole when at least some instructions were incorrect. The determinative issue here, however, is whether correct jury instructions regarding sudden heat were required at all; or, stated differently, whether incorrect jury instructions prejudiced Wagener.

6

After all, our supreme court has stated: "We have repeatedly held that <u>any</u> <u>appreciable evidence</u> of sudden heat justifies an instruction on voluntary manslaughter." <u>Roark v. State</u>, 573 N.E.2d 881, 881 (Ind. 1991) (emphasis added); <u>see</u> <u>Washington v.</u> <u>State</u>, 808 N.E.2d 617 (Ind. 2004) (the most recent Indiana Supreme Court opinion referring to "any appreciable evidence" of sudden heat). Based on this reasoning, we might conclude that even if the mitigation of sudden heat was not Wagener's primary defense, a correct jury instruction was required so long as "any appreciable evidence" of sudden heat was presented. More recently, however, our supreme court has held: "[I]f there is no <u>serious evidentiary dispute</u> over sudden heat, it is error for a trial court to instruct a jury on voluntary manslaughter in addition to murder." <u>Watts v. State</u>, 885 N.E.2d 1228, 1231 (Ind. 2008) (emphasis added).

The two firm rules articulated in <u>Roark</u> and <u>Watts</u> appear to conflict. Thus, we are tasked with reconciling the opinions, and do so in reliance on additional supreme court precedent, which ultimately outlines an approach far closer to the more recent <u>Watts</u> than <u>Roark</u>. In <u>Boesch</u>, which concerns the same issue as that before us, the court stated:

> When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in <u>the context of all relevant information given to the jury, including closing argument and other instructions</u>. There is no resulting due process violation <u>where all such information considered as a whole</u> does not mislead the jury as to a correct understanding of the law.

778 N.E.2d at 1279 (emphasis added, citations omitted).

<u>Roark</u> and <u>Watts</u> provide guidance – albeit somewhat mixed messages – to trial courts as to when particular instructions are necessary or prohibited. While these cases and others which opine on the propriety of trial court actions and omissions are often

7

helpful and determinative in post-conviction proceedings, <u>Boesch</u> is of a different ilk, and is more helpful here. The portion of <u>Boesch</u> quoted above might be useful in only post-conviction proceedings because it refers back in time to all information given to the jury, correct and incorrect, which includes factual evidence presented, legal and factual arguments made during closing arguments, and the trial court's jury instructions and other miscellaneous statements. All of this information – particularly the jury instructions provided – is not available at the time the trial court is considering how to instruct the jury. We believe it self-evident that trial courts do not consider the range of latitude to which they may err in instructing juries – trial courts intend to get it right, and almost always do.

In any event, at this point in the post-conviction process of Wagener's case, <u>Boesch</u> is most helpful. As a matter of law, the State's argument is correct: it is not reversible error for the trial court to have mistakenly provided incorrect jury instructions where the factual evidence presented, the legal arguments articulated, and the jury instructions given – considered as a whole – did not lead the jury to apply incorrect law to material facts or those facts which were disputed. <u>See</u> <u>Boesch</u>, 778 N.E.2d at 1279. To be clear, this refers to statements of the law regarding issues of material or disputed facts; where erroneous statements of the law refer to immaterial or undisputed facts only, the error is harmless.

This approach makes sense especially in this case and other similar cases, where the defense counsel made a strategic decision to employ an "all or nothing" strategy to seek acquittal or reckless homicide (a Class C felony), and to avoid a conviction of murder or voluntary manslaughter (a Class A felony if committed by means of a deadly

weapon).[3]  Where defense counsel makes a tactical decision to avoid a "compromise" position for the jury, "an unsupported voluntary manslaughter instruction deprives the defendant of the opportunity to pursue a legitimate trial strategy." Watts, 885 N.E.2d at 1233.

Now we must determine whether the record reveals the jury instructions provided incorrect law to material or disputed facts.  The post-conviction court concluded that Wagener's attorney aimed for the lesser offense of reckless homicide because even a voluntary manslaughter conviction would have resulted in a significant sentence for Wagener.  Wagener testified he aimed his gun at Dean Miller's legs with the intent to detain Miller until police arrived.  Trial Transcript at 313-15.  He testified he was not "mad" at Miller or his wife, he did not "hate" Miller, and that he was not "angry," "enraged," "jealous," or "resentful."[4]  Wagener disputed telling the wounded Miller anything to the effect of "mother-f . . . ker, I'll teach you to mess with me[.]" Id. at 316.  Wagener's testimony thus eliminates the possibility of the jury reasonably determining Wagener was under the influence of sudden heat when he shot Miller, and likewise eliminates the possibility of the jury reasonably finding the State failed to disprove Wagener's sudden heat.  See Suprenant, 925 N.E.2d at 1282 (stating that anger alone does not constitute sudden heat); Smedley v. State, 561 N.E.2d 776, 782 (Ind. 1990)

---

[3] Our supreme court explained the "all or nothing" strategy in Watts, and we suspect that, in comparison to murder or voluntary manslaughter as a Class A felony, reckless homicide might seem like "nothing" to a defendant:
> One legitimate trial strategy for the defendant in a murder trial is an "all-or-nothing" one in which the defendant seeks acquittal while realizing that the jury might instead convict of murder.  In a situation where a jury must choose between a murder conviction and an acquittal, the defendant might well be acquitted.  But if the jury has voluntary manslaughter as an intermediate option, the defendant might be convicted of voluntary manslaughter as a "compromise."

Watts, 885 N.E.2d at 1233.

[4] Wagener did state that he was upset, physically hurt, and under the influence of alcohol and medication.

9

(concluding that the defendant's intoxication has no bearing on the presence or absence of sudden heat).

As noted in Boesch, closing arguments are also helpful as we consider whether the presence of sudden heat was a material, disputed issue. The State began its closing argument by emphasizing Wagener's remarks after shooting Miller, which, the State argued, demonstrated Wagener's intent to kill. Id. at 345. The State contended: "The only issue I believe that you have in this case is the culpability. . . . I think [defense counsel]'s going to try to convince you to return the verdict form for Reckless Homicide . . . . I urge you to return a verdict of Murder, guilty, because when this man pulled that trigger, he intended to kill." Id. The entirety of the State's closing argument focused on Wagener's intent to kill, except for a few short statements that intoxication is not a defense. Id. at 345-46.

Wagener's trial attorney's closing argument also focused on Wagener's intent. He told the jury he agreed that culpability was the main issue, and said, "when we talk about culpability, we talk about intentional conduct, we talk about knowing conduct and we talk about reckless conduct." Id. at 347. He discussed what it means for a defendant to act knowingly or intentionally, and argued that Wagener's conduct was not intentional. He attacked the credibility of witnesses whose description of events might have led jurors to conclude Wagener acted intentionally. As a whole, Wagener's attorney's closing argument demonstrated a strategic decision to concede that Wagener shot Miller, forego a claim of absolute innocence, and aim for a conviction of reckless homicide in an effort to avoid a conviction of murder or voluntary manslaughter. Id. at 347-55.

10

At the post-conviction hearing, Wagener's trial attorney explained that upon Wagener testifying essentially that he was not acting under sudden heat, Wagener's trial attorney adjusted his strategy to that which we described is evident from his closing argument – try to persuade the jury that Wagener lacked the intent to kill. By the time the jury received the partly erroneous instructions, Wagener's testimony obliterated any reliance upon sudden heat and Wagener's attorney steered the jury further from that conclusion in his closing arguments. The partly erroneous jury instructions then, referred to facts which were by that time not disputed and thus immaterial.

In denying Wagener post-conviction relief, the post-conviction court explained that the trial court's erroneous jury instruction regarding sudden heat proved irrelevant because Wagener's testimony rendered it useless for defense counsel to encourage the jury to find Wagener guilty of voluntary manslaughter rather than murder. This explanation is persuasive because it demonstrates that Wagener himself eliminated the mitigating factor for which he now grasps. See Kingery v. State, 659 N.E.2d 490, 494 (Ind. 1995) (concluding that a defendant invited the error he challenges on appeal by eliciting the evidence which he now challenges).

The post-conviction court's explanation is also persuasive because it demonstrates that the narrowed focus of the closing argument – which conceded as undisputed what Wagener now claims was error – was a deliberate strategic decision by Wagener's trial counsel. Indiana appellate courts "will not speculate as to what may have been counsel's most advantageous strategy, and isolated poor strategy, bad tactics, or inexperience does not necessarily amount to ineffective assistance." Sarwacinski v. State, 564 N.E.2d 950, 951 (Ind. Ct. App. 1991) (declining to conclude trial counsel was ineffective in relying

solely on self-defense, in murder prosecution, and not seeking a jury instruction on the lesser-included offense of voluntary manslaughter under the belief that it would weaken the self-defense case).

In sum, we agree with the post-conviction court that Wagener did not receive ineffective assistance of trial counsel because the factual evidence presented, the legal arguments articulated, and the jury instructions given – considered as a whole – did not lead the jury to apply incorrect law to material facts or those facts which were disputed.

<u>Conclusion</u>

Wagener failed to show that his trial counsel's performance fell below an objective standard of reasonableness. Therefore, we affirm the denial of his petition for post-conviction relief.

Affirmed.

BAKER, J., and BRADFORD, J., concur.