Roger BOESCH, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 45S00–9909–CR–467.

Supreme Court of Indiana.

Nov. 25, 2002.

J. Richard Kiefer, K. Michael Gaerte, Kiefer & McGoff, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Nandita G. Shepherd, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## CONSOLIDATED DIRECT APPEAL AND APPEAL FROM DENIAL OF POST–CONVICTION RELIEF

DICKSON, Justice.

The defendant, Roger Boesch, was convicted of the 1998 murder of his wife, Saundra Boesch, and was sentenced to a term of fifty-two years. He initiated a direct appeal in this Court and requested remand to the trial court in order to pursue post-conviction relief pursuant to *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977). We granted the defendant's motion and suspended consideration of his direct appeal pending the post-conviction determination. Upon the denial of post-conviction relief, the defendant now presents his consolidated appeal from the judgments of both the initial trial court and the post-conviction court, asserting that (1) the inclusion of sudden heat as an element of voluntary manslaughter in one jury instruction constitutes fundamental error; and (2) he received ineffective assistance of his trial counsel. We affirm the trial court and the post-conviction court.

### Voluntary Manslaughter Instruction

In his direct appeal, the defendant claims that the trial court committed fundamental error by instructing the jury in his murder trial that before it could find the defendant guilty of the lesser-included offense of voluntary manslaughter, the State must have proved that the defendant "did the killing while acting under sudden heat." Trial Record at 115.[1]

The defendant argues that by so instructing the jury, the court effectively eliminated his chance of obtaining a voluntary manslaughter conviction, as the State, pursuing a murder conviction, was clearly unmotivated to prove sudden heat.

■ It is well settled in Indiana that sudden heat is not an element of voluntary manslaughter. *Isom v. State*, 651 N.E.2d 1151, 1152 (Ind.1995); *Bane v. State*, 587 N.E.2d 97, 100 (Ind.1992); *Palmer v. State*, 573 N.E.2d 880 (Ind.1991); *Wilcoxen v. State*, 705 N.E.2d 198, 203 (Ind.Ct. App.1999). Rather, once a defendant presents evidence of sudden heat, the State bears the burden of *disproving* its existence beyond a reasonable doubt. Ind. Code § 35–42–1–3(b); *Bane*, 587 N.E.2d at 100. An instruction assigning to the State the burden of affirmatively proving sudden heat is erroneous as a matter of law, and when properly objected to at trial may require a new trial on the murder charge. *Id.* at 100–01.

■ The defendant concedes that his trial counsel neither objected to the erroneous instruction nor tendered a proper instruction. As a result, the defendant may not present this claim on appeal. Ind. Trial Rule 51(C); *Mitchell v. State*, 726 N.E.2d 1228, 1235 (Ind.2000). To avoid procedural default, the defendant argues that because the issue of sudden heat

was at the heart of his defense, the court committed "fundamental error" by improperly instructing the jury that sudden heat is an element of voluntary manslaughter. The "fundamental error" rule is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002) (citing *Mitchell*, 726 N.E.2d at 1236); *see also Ford v. State*, 704 N.E.2d 457, 461 (Ind.1998).

■ When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, *Isom*, 651 N.E.2d at 1153, and other instructions, *id.; Bane*, 587 N.E.2d at 101. There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law. *Isom*, 651 N.E.2d at 1153. For example, in *Bane*, the jury in a murder trial was instructed in a manner similar to the present case. At one point the instructions stated that sudden heat is an element of voluntary manslaughter and that the State bore the burden of its proof. *Bane*, 587 N.E.2d at 100. However, at another point the instructions informed the jury that sudden heat is a mitigating factor that reduces what would otherwise be murder to manslaughter. *Id.* This Court found that the instructions were inartfully drafted and technically erroneous, but did not constituted fundamental error. *Id.* at 101. Similarly, in *Isom*, 651 N.E.2d 1151, although the jury was incorrectly instruct-

---

1. To avoid confusion we will refer to the record on direct appeal as "Trial Record" and the record from the post-conviction hearing as "P.C.R. Record."

ed that sudden heat is an element of voluntary manslaughter, it was also informed that sudden heat "acts as a mitigator for reducing what would otherwise be murder to voluntary manslaughter," and was reminded by defense counsel in closing argument that sudden heat acts as a mitigator. *Id.* at 1153. This Court concluded that the challenged sudden heat instruction carried an erroneous suggestion but did not constitute fundamental error. *Id.*

Conceding that *Isom* and *Bane* are at odds with his position, the defendant urges us to reconsider our holdings in those cases, or at least to distinguish them factually from his own. We decline.

■ It is highly improbable that the jury in this case was misled as to an accurate legal understanding of sudden heat and its significance. First, as did the instruction in *Bane*, the instruction about which the defendant complains quotes Indiana's voluntary manslaughter statute, which states that "[t]he existence of sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter." Trial Record at 115 (quoting Ind.Code § 35–42–1–3). Second, the instruction that immediately followed stated that "[i]n order to prove the offense of Murder, if there is some evidence of 'sudden heat,' then the State bears the burden in its evidence of negating the existence of sudden heat beyond a reasonable doubt." Trial Record at 116. Finally, the defendant's attorney emphasized the point in his closing argument to the jury:

> The existence of sudden heat is a mitigating factor, a reducing factor, that reduces what otherwise would be murder to voluntary manslaughter. And the instruction goes on that the state must, if there is evidence of sudden heat, the state must prove to you beyond a reasonable doubt the nonexistence of sud-

den heat to avoid a voluntary manslaughter conviction if you believe it was intentionally or knowingly done.

> So there is a burden on the state.... They must, in essence, tell you there was no sudden heat, and you have to believe that beyond a reasonable doubt to find him guilty of murder, because if sudden heat is there and this court's instructions will tell you, you have got to find—you have got to find voluntary.

Trial Record at 1241–42.

We hold that, although erroneous, the challenged single passage did not constitute fundamental error. Because no objection was made at trial and the error was not fundamental, the defendant may not assert this argument on appeal.

### Ineffective Assistance of Counsel

Having considered the issue presented in the defendant's direct appeal from his conviction, we now turn to his appeal from the denial of post-conviction relief. The sole ground raised by the defendant in his petition for post-conviction relief was ineffective assistance of counsel. P.C.R. Record at 13. Using the two-part test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the post-conviction court, after a full evidentiary hearing, found that (1) there was no evidence that "the performance of trial counsel fell below the norms of prevailing professional conduct" and (2) "[t]here is no evidence ... that trial counsel's handling of the petitioner's case prejudiced the petitioner." P.C.R. Record at 59.

■ When reviewing a denial of post-conviction relief, we give no deference to the post-conviction court's legal conclusions, but to the extent the decision turns on factual determinations, our review is deferential, and will result in reversal only

when the decision is found to be clearly erroneous. Ind. Trial Rule 52(A); *Stevens v. State,* 770 N.E.2d 739, 746 (Ind.2002). The defendant "must convince this Court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Id.* at 745.

The defendant supports his claim of ineffective assistance of counsel by arguing that his trial counsel (1) failed to object to a clearly erroneous jury instruction, (2) presented inconsistent theories of defense, and (3) failed to conduct an exhaustive scientific and factual investigation that may have supported an accident defense, thus rendering his conviction and sentence unreliable.

### a. Failure to Object

■ The defendant first claims that his trial counsel was ineffective because he failed both to object to the erroneous voluntary manslaughter instruction discussed above and to tender a proper instruction in its place. He acknowledges that this claim was not included in his petition seeking post-conviction relief. Indiana Post–Conviction Rule 1(8) requires that all available grounds for relief be raised in a petitioner's original or properly amended petition. "Issues not raised in the petition may not be raised for the first time on post-conviction appeal." *Allen v. State,* 749 N.E.2d 1158, 1171 (Ind.2001).

■ The defendant attempts to overcome this result by arguing that the failure to specify this claim in the petition for post-conviction relief constitutes fundamental error. The fundamental error doctrine is not applicable in post-conviction proceedings. *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002); *Canaan v. State,* 683 N.E.2d 227, 235 n. 6 (Ind.1997).

### b. Inconsistent Theories of Defense

The defendant next claims that his right to counsel was violated because his trial counsel contradicted the defendant's trial testimony that he did not intend to kill his wife. The defendant argues that his lawyer (1) made statements during his closing argument insinuating that the defendant *did* intend to kill his wife, and (2) presented a defense of voluntary manslaughter rather than accident. The defendant argues that "[t]his inconsistency forced the jury to decide not only whether to believe the State's version or Boesch's, but also whether they believed Boesch's or his own lawyer's." Br. of Appellant at 37. The State responds that the issue of inconsistent theories of defense is waived because it was not raised in the defendant's petition.

■ The facts alleged in the petition in support of the defendant's claim of ineffective assistance of counsel are as follows:

1) trial counsel instructed me to present false testimony over my objections; 2) trial counsel failed to listen to my recitation of events leading to the death of my wife and to recognize the potential "accident" defense; 3) trial counsel conceded my guilt by admitting in opening statement that I killed my wife (this was done without my consent); 4) [trial counsel] insisted upon a defense of "voluntary manslaughter" (i.e. "sudden heat") over my objections; 5) trial counsel insisted, over my objections, that the only issue was whether I acted in "sudden heat" and would not even consider my claim that I did not intend to kill my wife. . . .

P.C.R. Record at 13–14. While "inconsistent defenses" is not explicitly asserted in the petition, we find that the defendant's appellate claims on this point are within the issues raised in the his petition.

■ The defendant testified that while swimming in their pool, his wife told him for the first time that she was having an affair with his brother and that she wanted a divorce. The defendant admitted that an argument and physical struggle ensued, during which he grabbed his wife with both hands and pulled her about as hard as he could into the pool by her ankle, pushed her under the water at least twice, and grabbed her around the neck and squeezed. He also testified that they were hollering, shoving, wrestling, and screaming, and that at some point he realized things had gotten "out of hand" and that he should not be doing what he was doing. Trial Record at 1101–10. The defendant stated that he had never been so mad, Trial Record at 1150, and that he pushed her under the water because he did not want to hear what she was saying. Trial Record at 1106.

The defendant contends that he received ineffective assistance when his counsel asserted in his closing argument that the defendant did, in fact, intend to kill his wife, saying: "His intention was to punish. His intention was to inflict pain. His intention was to repay her ..." Br. of Appellant at 33 (quoting Trial Record at 1245). This quoted segment of defense counsel's closing statement, however, is incomplete and misleading in its failure to disclose material facts. What counsel actually said was: *"I don't think that that was his intention; death. His intention was to inflict pain. His intention was to repay her for the pain he [sic] just inflicted on her [sic], but it wasn't an intent to kill which is something you need to have a murder."* Trial Record at 1245–46 (emphasis added). He repeated this assertion just a few statements later: "He didn't think he killed her, and it never was his intent to kill her.... He did squeeze her neck, but he did it in sudden rage." Trial Record at 1251–52.

The jury was instructed that the defendant was charged with murder by "knowingly or intentionally" killing his wife. Trial Record at 110. The defendant argues that his trial testimony insisted that "he did not have any intent to kill Saundra." Br. of Appellant at 33. His testimony does not dispute, however, that the killing may have occurred "knowingly." A person acts knowingly if "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(b). The defense counsel's closing statement repeatedly asserted that the defendant did not intend to kill his wife. Trial Record at 1245–46, 1251–52. But, despite the claim of no intentional killing, the fact that the defendant had forcefully choked his wife remained as strong evidence of a knowing killing. To address this evidence, the defendant's attorney urged the jury to consider the alternative lesser offenses of reckless homicide, involuntary manslaughter, and voluntary manslaughter, strongly arguing for the presence of sudden heat. Considered in its totality, counsel's argument did not contradict his client.

The defendant offers *Sherwood v. State*, 717 N.E.2d 131 (Ind.1999) in support of his argument that discrepancies in defense theories between a defendant and his or her counsel constitute ineffective assistance. The defendant in that case was denied his request to proceed *pro se*, and was instead forced to submit to a hybrid representation scheme whereby he and an appointed attorney presented conflicting defenses. This Court there held that forced representation by counsel upon a defendant who wished to conduct his own defense violated his Sixth Amendment right to self-representation. *Id.* at 136. But this issue is not presented in the present case.

In light of the defendant's testimony, it was neither unreasonable nor inconsistent for counsel to present a voluntary manslaughter defense as an alternative defense strategy. We reject the defendant's claims that his trial counsel's closing statement denied or contradicted his trial testimony that he did not intentionally kill his wife. This conduct of trial counsel was not deficient.

### c. Failure to Investigate

The defendant finally claims that his trial counsel was ineffective for failing to properly investigate (1) scientific material that may have supported an accident defense, and (2) the weaknesses in the testimony of Don Weaver, a critical State witness. The State claims, and the post-conviction court concluded, that these issues are waived because they were not raised in the defendant's petition for post-conviction relief. P.C.R. Record at 59. To the contrary, we find that the defendant's claim of failure to investigate the accident defense is sufficiently covered by the allegation in the defendant's petition that, "[t]rial counsel failed to listen to my recitation of events leading to the death of my wife *and to recognize the potential "accident" defense.*" P.C.R. Record at 13–14 (emphasis added). This asserted claim encompasses the defendant's argument that, had his counsel properly investigated the available scientific material, he would not have dismissed an accident defense in favor of sudden heat. We decline to find waiver as to this claim.

The defendant has maintained that his wife's death was the result of an accident. He believes that she probably hit her head when they were fighting, causing her to pass out and drown after the defendant left the pool. Defense counsel reviewed photographs and the victim's autopsy reports with a pathologist and was informed that: the victim did have a gash on the back of her head, but that it was not the cause of her death; the victim had petechiae hemorrhages in her eyes indicating strangulation; there was no water in the victim's lungs, indicating that she did not drown; there were focal hemorrhages on the victim's neck, or fingerprints left by someone applying pressure over time, and; the cause of death was asphyxiation (lack of oxygen). After this discussion with the pathologist, defense counsel advised the defendant that he did not believe the evidence would support an accident defense.

In the post-conviction proceedings, however, the defendant presented testimony of three physicians, including the doctor who performed his wife's autopsy, who stated that they believed that drowning could have been his wife's cause of death, notwithstanding the absence of water in her lungs. The defendant also quotes a medical treatise indicating that as many as 10%–20% of all drowning victims may never inhale water into their lungs. Br. of Appellant at 40. The defendant argues that:

> Because he failed to conduct necessary medical research and failed to seek expert witness support for an accidental drowning with no water in the lungs, [defense counsel] assumed incorrectly that Saundra's death could not have been an accident, rejected his own client's version of the facts and testimony at trial, and argued to the jury that [the defendant] was guilty of manslaughter.

Br. of Appellant at 42–43.

When deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments. *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984). In *Strickland,* the United States Supreme Court observed that:

> [S]trategic choices made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.

*Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

We see no evidence that defense counsel's investigation fell below objective standards of reasonableness. He testified at the post-conviction hearing that he did not contest the defendant's theory of his wife's death when relayed to him by the defendant. It was only after counsel studied the autopsy reports and photographs and consulted with a pathologist that he determined an accidental death defense appeared totally unrealistic within the facts of the case.

Furthermore, the defendant has made no showing that the outcome of his case would likely have been different had counsel further investigated scientific data regarding "dry drowning." He admits in his brief that "it is unknown what evidence existed, but pointed in other directions." Br. of Appellant at 36. He also admits that only between 10% and 20% of drowning victims do not inhale water into their lungs, which translates to a 20% chance, at best, that the victim's cause of death was accidental drowning. When this low statistical probability is combined with the other medical evidence and the testimony of the witness who claims to have seen the defendant holding the victim under the water with his hands around her neck, we are not persuaded that there is a reasonable probability that the accident defense now urged by the defendant would have produced a result more favorable to him.

As for the defendant's claim that his attorney failed properly to investigate the proposed testimony of Don Weaver, a State witness, we agree with the State that this issue was not raised in the defendant's petition for post-conviction relief. The defendant concedes this but claims that, because the issue was addressed in detail at the post-conviction hearing and was the subject of extensive cross examination, it is not subject to waiver.

The merits of this issue, however, were not tried with the consent of the State. Asserting waiver, the State repeatedly objected to testimony regarding: deficiencies in investigation, (P.C.R. Record at 90); failure to develop impeachment material for Don Weaver, (P.C.R. Record at 169); and any testimony not concerning sudden heat. (P.C.R. Record at 298). The post-conviction court ruled that it would allow the witnesses to continue, but would show a continuing objection by the State and would base its ruling only on those grounds raised in the petition. P.C.R. Record at 301. Because the issue was not included in the defendant's petition for post-conviction relief, it may not be raised in this appeal.

The defendant has failed to establish that the performance of his trial counsel fell below the norms of prevailing professional conduct. We decline to find that he was deprived of his right to counsel.

### Conclusion

We affirm the judgment of the trial court and the judgment of the post-conviction court denying the defendant's petition for post-conviction relief.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.