Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 04 2014, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**THOMAS W. VANES**
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JERMAINE CHRISTOPHER SCOTT,      )
                                 )
    Appellant-Defendant,         )
                                 )
    vs.                          )      No. 45A05-1307-CR-344
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-1107-FB-66

**March 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Jermaine Christopher Scott appeals his conviction for burglary, as a Class B felony, following a jury trial. Scott presents a single issue for review: Whether the trial court committed fundamental error when it instructed the jury regarding a co-defendant's testimony at trial. We affirm.

## FACTS AND PROCEDURAL HISTORY

In the early hours of July 10, 2011, Anna Rose slept in a recliner in her ground-level apartment on Michigan Avenue in Hammond. A cold breeze from an open window in the apartment woke Rose, who found that the back door was ajar and her big screen Phillips television was missing. Rose telephoned the police to report the burglary.

The same night, even before Rose called to report the break-in, an anonymous caller reported to the Hammond Police Department that someone was carrying a large screen television in an alley near 1105 Michigan Avenue. Officer Keith Barnard and Officer Ryan Orr of the Hammond Police Department responded separately. Officer Barnard investigated the alley off 1105 Michigan Avenue, and Officer Orr looked nearby. Officer Barnard observed an open window in the home at 1105 Michigan, and then he heard a woman, Rose, calling to him. Rose told Officer Barnard that her television was missing from her apartment.

While Officer Orr was searching the alley that connects Wilcox and Michigan Avenue, a passing motorist informed him that the motorist had seen three men with a television in a nearby alley north of Michigan Avenue and west of Columbia. As Officer Orr proceeded to that location, a vehicle with at least two occupants and a temporary

2

license plate exited the alley and turned onto Columbia. Officer Orr followed in his vehicle and attempted to initiate a traffic stop to investigate why the vehicle had been in the area of the suspicious activity. The other vehicle failed to stop and drove away at a high rate of speed. When the vehicle began to disregard stop signs, Officer Orr discontinued his pursuit in the interest of safety.

Shortly thereafter, Hammond dispatch advised officers that there had been a hit and run collision with a pick-up truck on Michigan Avenue near Indianapolis Boulevard, which is in the general area the chase vehicle had been heading. The truck's driver, Carlos Bernal, reported that a blue vehicle, possibly a Grand Prix or Lincoln, had passed him on the right, driving off the road, and that the other vehicle's back left quarter had hit the truck's front right quarter as the vehicle re-entered the road. Bernal observed three people in the blue vehicle as it passed him, saw it turn in behind an abandoned warehouse, and then telephoned police. Two minutes later he saw three men walking from the area where the vehicle had parked.

When Hammond Police Officer Robert Trost arrived on the scene in response to Bernal's call, Bernal informed him of the damage from the collision and directed the officer's attention to the three men. Officer Trost and his canine partner then approached the three men and ordered them to the ground. The three men, Scott, Michael Bates, and a juvenile, complied, and other officers soon arrived on the scene. Parked twenty-five to thirty feet away from the men was the vehicle that had hit Bernal's truck, a blue Grand Marquis without a permanent license plate, and in the back seat was a big screen Phillips television that Rose later identified as the one taken from her apartment.

3

The State charged Scott with burglary, as a Class B felony, and later added an habitual offender allegation. The State similarly charged Bates, but processed the other person arrested as a juvenile. A bifurcated jury trial was held on April 11, at which Bates testified. In the first phase, the trial court instructed the jury in relevant part as follows:

> The State called as a witness an alleged accomplice with whom the State has entered into a plea agreement providing for a lesser sentence than he would have otherwise been exposed to for the offense to which he plead [sic] guilty. Such plea bargaining, as it is called, has been approved as lawful and proper.
>
> An alleged accomplice, including one who has entered in[to] a plea agreement with the State, does not become incompetent as a witness. On the contrary, the testimony of such a witness may alone be sufficient weight to sustain a verdict of guilty. However, the jury should keep in mind that such testimony is always to be reviewed with caution and weighed with great care.
>
> The fact that an accomplice has entered a plea of guilty to the offense charged is not evidence of the guilt of any other person.

Transcript at 399. The jury found Scott guilty of burglary, as a Class B felony, and in the second phase they adjudicated him to be an habitual offender. The trial court sentenced him to fifteen years for burglary enhanced by twenty years for being an habitual offender, for an aggregate sentence of thirty-five years. Scott now appeals.

## DISCUSSION AND DECISION

Scott raises a single issue for our review, namely, whether the trial court committed fundamental error when it instructed the jury on accomplice liability. As our Supreme Court has explained:

> A claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred. The fundamental error

4

exception is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." This exception is available only in "egregious circumstances."

Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (citations omitted).

The task of instructing the jury is left to the sound discretion of the trial court. As we have explained:

The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise.

Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008) (citations and quotations omitted). When determining whether fundamental error occurred based on an incorrect jury instruction, "we look not to the erroneous instruction in isolation" but to "all relevant information given to the jury, including closing argument and other instructions." Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002) (citations omitted).

Scott contends that the trial court committed fundamental error when it instructed the jury regarding Bates' testimony. In particular, Scott argues that, because jury instructions focusing on the testimony of a single witness are disapproved, the giving of such an instruction in this case constitutes fundamental error. We cannot agree.

5

Regardless of whether the instruction at issue is erroneous, again, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. Williams, 891 N.E.2d at 630. An instruction error will result in reversal when the reviewing court cannot say with complete confidence that a reasonable jury would have rendered a guilty verdict had the instruction not been given. Stoltmann v. State, 793 N.E.2d 275, 281 (Ind. Ct. App. 2003), trans. denied.

Here, even if we disregard Bates' testimony, the evidence supports Scott's conviction. Specifically, Rose testified that someone entered her home and took her big screen Phillips television, about the same time a bystander saw someone carrying a large television in an alley near Rose's apartment. Officer Orr saw at least two men leave that alley in a blue vehicle with a temporary license plate and attempted to initiate a traffic stop. The vehicle that Officer Orr attempted to stop fled at a high rate of speed, and Bernal's truck was in the general area to which the blue vehicle had been headed when his truck was hit by a blue vehicle with three occupants. And Bernal saw the blue vehicle park behind an abandoned warehouse and later saw three men walking away from that general area, and Scott was one of those three men that Officer Trost then arrested. Moreover, a blue vehicle was parked twenty-five to thirty feet away from where Scott and the others were arrested. That vehicle had no permanent license plate, had sustained damage to the back left quarter, and contained a large screen Phillips television in the back seat. Rose later identified that television as hers. And at trial, the jury was instructed on accomplice liability.

In sum, even discounting Bates' testimony, the remaining evidence clearly sustains Scott's conviction for burglary, as a Class B felony, either as the principal or as an accomplice. Thus, we cannot say that Scott was harmed by the instruction or much less that the giving of the instruction regarding accomplice Bates' testimony, if erroneous, rose to the level of fundamental error, and we affirm Scott's conviction.

Affirmed.

BAKER, J., and CRONE, J., concur.