## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 10 2018, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel K. Whitehead
Yorktown, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Juan Flagg,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 10, 2018

Court of Appeals Case No.
49A02-1708-PC-1719

Appeal from the Marion Superior Court

The Honorable Mark D. Stoner, Judge

The Honorable Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-0712-PC-273246

**Bailey, Judge.**

# Case Summary

Juan Flagg ("Flagg") appeals the denial of his petition for post-conviction relief, which challenged his convictions for Murder, Attempted Murder, Robbery, and Aggravated Battery.[1] He presents the sole issue of whether he was denied the effective assistance of trial counsel. We affirm.

# Facts and Procedural History

The relevant facts were stated by a panel of this Court, on direct appeal, as follows:

> During the early morning hours of December 16, 2007, Lamonica Radford and Anthony Graves were sleeping on their living room couch in their Indianapolis home. Six children and Lamonica's uncle, Kevin Radford, were sleeping in the home's two bedrooms. At approximately 6:30 a.m., Flagg, whose nickname is "Boy Boy," and another man kicked in the door of the home. Flagg was wearing a mask over part of his face and carrying a gun. Flagg shot Graves in the chest, killing him. Flagg also shot Lamonica in the knee. Flagg said to Lamonica, "B****, give me the s*** or I'm going to kill you." Tr. p. 107. Lamonica thought Flagg was referring to money from several paychecks that Graves had recently cashed. Lamonica ran from the living room to one of the bedrooms, where her daughter had been sleeping. Lamonica and her daughter held the door shut. Flagg threatened to shoot Lamonica's nephew if she did not open the door. Flagg shot through the bedroom door and struck Kevin, who had been sleeping on the bedroom floor, in the leg.

---

[1] He has not challenged his conviction for Dealing in Cocaine.

During the incident, Flagg said to Lamonica, "Remember Boy Boy did this." *Id.* at 120.

On December 19, 2007, Flagg was arrested outside of his girlfriend's apartment.[2] During a search of Flagg's girlfriend's apartment, a 9-mm handgun was discovered under a mattress. This handgun was later determined to be the weapon used in the shooting.

On December 21, 2007, the State charged Flagg with murder, felony murder, Class A felony robbery, Class A felony attempted murder, Class B felony aggravated battery, Class B felony criminal confinement, three counts of Class D felony criminal recklessness, and Class A misdemeanor carrying a handgun without a license. The State also alleged that Flagg's criminal history supported a Class C felony enhancement for the carrying a handgun without a license charge. The State eventually moved to dismiss the criminal confinement and three criminal recklessness charges. A jury found Flagg guilty of the murder and felony murder charges, the Class A felony robbery charge, the Class A felony attempted murder charge, the Class B felony aggravated battery charge, and the Class A misdemeanor handgun charge. Because of double jeopardy concerns, the trial court entered only convictions for murder, Class C felony robbery, Class A felony attempted murder, and Class B felony aggravated battery.

---

[2] When Flagg was arrested, he had twenty-seven grams of cocaine and another handgun in his possession. In a separate charging information, Flagg was charged with Class A felony dealing in cocaine, Class A felony possession of cocaine, Class C felony possession of cocaine and a firearm, and Class A misdemeanor carrying a handgun without a license, which was enhanced to a Class C felony based on Flagg's criminal history. Flagg was tried on these allegations along with the December 16, 2007 allegations and was convicted of the Class A felony dealing charge. Flagg does not challenge the drug-related conviction in this appeal.

*Flagg v. State*, No. 49A02-0903-CR-278, slip op. at 1 (Ind. Ct. App. Dec. 18, 2009), *trans. denied*. Flagg received a sentence of 133 years imprisonment.

[3] On appeal, Flagg raised four issues. He alleged fundamental error in the admission of certain evidence and claimed that insufficient evidence supported his convictions. We affirmed Flagg's convictions, concluding:

> The admission of Lamonica's statements regarding her
> marijuana use, the autopsy report, and the DNA evidence do not
> rise to the level of fundamental error. There is sufficient evidence
> to support Flagg's convictions. We affirm.

*Id.* at 5.

[4] On February 15, 2011, Flagg filed a petition for post-conviction relief. On January 22, 2016, he filed an amended petition, raising claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and prosecutorial misconduct. On March 24, 2016 and on June 16, 2016, the post-conviction court conducted evidentiary hearings. On July 26, 2017, the court issued its findings of fact, conclusions, and order denying Flagg post-conviction relief. Flagg now appeals.

# Discussion and Decision

## Post-Conviction Standard of Review

[5] The petitioner in a post-conviction proceeding bears the burden of proving the grounds for relief by a preponderance of the evidence. *Humphrey v. State*, 73

N.E.3d 677, 681 (Ind. 2017). On appeal, the petitioner then stands in the position of one appealing a negative judgment; that is, he or she must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* We do not defer to the post-conviction court's legal conclusions, but a post-conviction court's findings and judgment will be reversed only upon a showing of clear error, i.e., that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* at 682.

## Ineffectiveness Standard of Review

[6] When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Humphrey*, 73 N.E.3d at 682. To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have 'counsel' guaranteed by the Sixth amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

# Allegations Regarding Trial Counsel's Performance

[7] Flagg identifies five alleged deficiencies in the performance of his trial counsel: (1) appointed counsel did not file a successive motion for severance after the trial court denied a motion for severance filed by Flagg's private counsel; (2) counsel did not contradict or request an admonishment regarding Lamonica's denial of marijuana use; (3) counsel did not move to exclude the autopsy report introduced via testimony from a pathologist who did not perform the autopsy; (4) trial counsel did not object to the admission of DNA evidence; and (5) trial counsel did not depose a nine-year-old victim of the home invasion.

[8] <u>Severance</u>. Flagg was arrested for Murder on December 19, 2007, in the exterior common area of the apartment complex where his girlfriend, India Stone ("Stone"), leased an apartment. Flagg was found to be in physical possession of a Ruger firearm, scales, and a large amount of cocaine. Additionally, police officers recovered from underneath a mattress inside Stone's apartment a Cobray firearm subsequently tested and found to be the weapon that had fired the fatal shot into Graves.

[9] Because of the discovery of contraband incident to Flagg's arrest, the State charged Flagg with drug and firearms offenses in an Information separate from the Information alleging Murder and contemporaneous offenses. On June 27, 2008, the State moved to join all the offenses in the two separate cause numbers for trial. The State argued that the offenses were part of a joint plan, and that Flagg had used the cash obtained in the home invasion to purchase the cocaine

he possessed. The State also advised the trial court that the murder weapon had been recovered during Flagg's arrest. The trial court granted the State's motion for joinder. Flagg's counsel filed a motion for severance; however, the motion was denied.

[10] Flagg discharged private counsel and received court-appointed counsel and co-counsel. After court-appointed co-counsel reviewed ballistics testing results, she knew that the murder weapon was recovered from inside Stone's apartment and not from Flagg's person. She discussed the matter with lead counsel, but he did not pursue a second motion for severance. Flagg contends that, once the connection between himself and the murder weapon was known to be more attenuated than had it been recovered from his person, counsel should have filed a successive motion for severance and it likely would have succeeded.

[11] Regarding severance of offenses, Indiana Code Section 35-34-1-11(a) provides:

> Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
>
> (1) the number of offenses charged;
>
> (2) the complexity of the evidence to be offered; and

> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

[12] The foregoing provides two grounds for severance. A defendant is entitled to severance whenever the offenses have been joined for trial "*solely* on the ground that they are of the same or similar character." *Pierce v. State*, 29 N.E.3d 1258, 1265 (Ind. 2015) (quoting I.C. § 35-34-1-11(a) (emphasis in original). Otherwise, the trial court in its discretion must determine whether the offenses warrant joinder by "ask[ing] whether the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements." *Id.* at 1266.

[13] Indiana Code Section 35-34-1-12(a) requires that a motion for severance of crimes must be made before commencement of trial "except that the motion may be made before or at the close of all the evidence during trial if based upon a ground not previously known." If a defendant's pretrial motion for severance of offenses is overruled, "the motion may be renewed on the same grounds before or at the close of all the evidence during trial." I.C. § 35-34-1-12(b). Thus, successive counsel could have pursued a second motion for severance on Flagg's behalf. However, to prevail on a claim of ineffective assistance due to the failure to file a motion, Flagg must show a reasonable probability that the motion would have been granted if made. *Garrett v. State*, 992 N.E.2d 710, 723 (Ind. 2013).

[14] At the post-conviction hearing, Flagg argued that he never possessed the murder weapon and that his trial counsel's failure to obtain severance of the offenses permitted the prosecutor to falsely argue that Flagg was either guilty or

extremely unlucky because he was identified by a victim and then found to have the murder weapon. Essentially, Flagg disavowed any connection to the murder weapon. Flagg's co-counsel testified that she and the lead counsel discussed a successive severance motion but the decision rested with the lead counsel; in turn, lead counsel testified that he did not pursue a second motion because he did not feel that it was meritorious and would have been granted.

[15] Despite Flagg's efforts to distance himself from the murder weapon, and his assertion that the precise amount of money taken in the robbery was never established, there were adequate facts and circumstances before the trial court to support its conclusion that the charged offenses were sufficiently connected for joinder. Lamonica reported several thousand dollars missing in the robbery of her boyfriend; three days later the man she identified as the perpetrator was found in possession of cocaine worth thousands of dollars. The murder weapon was recovered from inside an apartment to which Flagg had access; indeed, he was arrested just outside the apartment. No evidence was presented to point to ownership or possession by another individual. In *Pierce*, our Indiana Supreme Court found offenses sufficiently connected such that the defendant was not entitled to severance where "the incidents shared much more than their criminal category." 29 N.E.3d at 1266. Here, the incidents likewise share more than a "criminal category" or the "mere satisfaction of the statutory elements." *See id.* Trial counsel did not perform deficiently by omitting a successive motion for severance.

[16] Testimony regarding Marijuana. Flagg contends that his trial counsel allowed perjury to go unchallenged when Lamonica testified that, before she was shot, she went to a birthday party at her aunt's house and drank, but did not smoke marijuana. Flagg argues that the denial is demonstrably false, because State's Exhibit 118, a stipulation regarding medical treatment provided to three victims, contains the language: "At the time of Lamonica Radford's admission to Wishard Hospital, she did report the use of alcohol and marijuana the previous night." (St. Ex. 118, pg. 271).

[17] Assuming the testimony and the information provided to hospital personnel referred to the same time frame,[3] the jury had before it contradictory accounts of Lamonica's marijuana use. Flagg insists that his counsel could have requested an admonishment but he has not provided authority for the proposition that such a request – to highlight alleged perjury – falls within the norms of reasonable representation. Indeed, "the fact of contradictory or inconsistent testimony does not mean the testimony is false." *Coleman v. State*, 946 N.E.2d 1160, 1167 (Ind. 2011). We find no deficiency in the omission of a request for admonishment to the jury in these circumstances.

---

[3] On direct appeal, a panel of this Court observed: "Although her statements appear inconsistent, her testimony is not developed enough to show whether she was referring to not smoking marijuana on the evening of December 15, 2007, or not smoking marijuana in the early morning hours of December 16, 2007. It is also unclear whether she was referring to not smoking marijuana while at her aunt's house or whether she was referring to not smoking marijuana at her house." *Flagg*, slip op. at 3.

Autopsy Report. Flagg contends that his trial counsel "stood idle" as Flagg's Sixth Amendment right of confrontation was violated by the admission of a report "testimonial in nature." Appellant's Brief at 23. Dr. Gary Utz, who performed the autopsy upon Anthony Graves's body, retired prior to Flagg's trial. Another forensic pathologist, Dr. Kent Harshbarger, testified regarding the findings compiled in the autopsy report, State's Exhibit 104, concluding that the cause of death was a gunshot wound that perforated the victim's lung. The State did not demonstrate that Dr. Utz was an unavailable witness. Flagg's counsel did not object on hearsay grounds. "In order to prove ineffective assistance of counsel due to the failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by the failure." *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001).

Under the Sixth Amendment of the United States Constitution, "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." This prohibits the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). The Court left "testimonial" undefined, but identified a "core class" of testimonial statements that the Confrontation Clause is primarily concerned with: (1) ex parte in-court testimony or its functional equivalent (material such as affidavits, custodial examinations, prior testimony or similar pretrial statements reasonably expected to be used prosecutorially); (2) extrajudicial statements in formalized

testimonial materials (such as affidavits, depositions, prior testimony, or confessions; and (3) statements made under circumstances leading an objective witness reasonably to believe that the statements would be available for use at a later trial. *Ackerman v. State*, 51 N.E.3d 171, 178 (Ind. 2016) (citing *Crawford*, 541 U.S. at 51-52.)

[20] A statement should be deemed testimonial when the circumstances objectively indicate that it was made for the primary purpose of establishing or proving past events potentially relevant to later criminal prosecution. *Id.* (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006)). "[A]lthough an autopsy could aid in the investigation or prosecution of a criminal case, our [Indiana] statutes alone do not suggest that assisting in a criminal case is the primary purpose of an autopsy." *Id.* at 186. Moreover, the presence of police officers during the autopsy should not be determinative of the primary purpose. *Id.* at 187. Rather, the court determines the primary purpose by an examination of the circumstances surrounding the death and the conduct of the autopsy. *See id.*

[21] Flagg now claims, but has not introduced evidence to establish, that the autopsy report was testimonial in nature.[4] Flagg's amended post-conviction petition did not address counsel's performance relative to admission of the autopsy report; Flagg did not elicit testimony or develop a corresponding argument before the

---

[4] The State observes that the autopsy report includes the notation: "The examination is being performed at the request of the Marion County Coroner's Office" and there is no suggestion that it was procured at the request of law enforcement. (State's Exhibit 104, pg. 2).

post-conviction court in this regard. Moreover, on appeal, he identifies no prejudice from the admission of the autopsy report. The cause of Graves's death was not a contested issue for trial; Flagg's defense was one of misidentification. Flagg may not prevail upon a bald, unsupported assertion of ineffectiveness for failure to object to the autopsy report. *Wrinkles*, 749 N.E.2d at 1192.

[22] DNA Evidence. At trial, the State introduced expert testimony regarding DNA testing performed upon four swabs taken from the murder weapon. Forensic scientist Tanya Fishburn ("Fishburn") testified that there were more than two contributors of DNA and Flagg was "not eliminated" as a contributor. (Tr. at 407.) Fishburn estimated that the probability of an unrelated individual being a contributor was 1 in 1,000 Caucasians, 1 in 200 African Americans, and 1 in 2,000 Hispanics. DNA samples from the shell casings produced inconclusive results, as was expected.[5] During testing, Fishburn learned that DNA belonging to a crime lab employee was present on a sample; the sample was discarded. She denied using any contaminated sample in obtaining admissible results. Fishburn summarized her ultimate conclusion, that is, "nothing tested" led her to "say with any level of certainty" that Flagg's DNA was present. (Tr. at 414.)

---

[5] Fishburn estimated that a DNA profile can be obtained from shell casings in less than 1% of cases.

[23] Flagg now argues: "It goes without saying that failing to properly object or file the appropriate motion to suppress those exhibits, and allowing such objectionable evidence to go to a jury for an inference of guilt, results in substantial prejudice to [Flagg]." Appellant's Brief at 25. As best we can discern Flagg's corresponding argument regarding "appropriate" motions, he claims that counsel should have challenged the admission of results derived from contaminated swabs and unsupported by adequate foundational testimony as to the chain of custody.

[24] At the post-conviction hearing, Flagg proceeded pro-se and explained the crux of his DNA argument was that the samples used at his trial had been "planted." (P-C.R. Tr., Vol. I, pg. 137.) He asserted that Fishburn never received his DNA swab, and he elicited testimony from crime lab employees Fishburn, Melissa Wilson, and Sangeeta Joshi ("Joshi") regarding their handling of evidence. However, their testimony did not support Flagg's argument.

[25] Joshi testified that she handled the DNA swabs submitted for Fishburn's testing and specified that she "didn't swap out" samples. (P-C.R. Tr. Vol. II, pg. 3.) Flagg expressed concern that State's Exhibit 96, a large envelope, had not been delivered to Fishburn and Joshi responded to this concern at some length. She explained that she had received buccal swabs for DNA analysis from Detective Marcus Kennedy. The swabs were initially in a large envelope; however, Joshi repackaged the swabs into small coin-type envelopes and placed them in a transfer box for analysis. Fishburn testified that she received the coin-type envelopes and not the larger envelope. She further testified that the coin-type

envelopes were taken to court and that she had "followed protocol" in providing the trial exhibits. (P-C.R. Tr. Vol. II, pg. 193). She explained that the crime lab employees used an electronic tracking system and each was required to scan a bar code upon transfer of an item. According to Fishburn, an up-to-date chain of custody was maintained in this manner. Fishburn, like Joshi, explicitly denied that evidence had been "swapped." (P-C.R. Tr. Vol. II, pg. 193.)

[26] To the extent Flagg now argues that contaminated DNA results were submitted into evidence by the State or that there was a break in the chain of custody, which might have prompted his counsel to object, the evidence presented at the post-conviction hearing does not point unerringly to a result opposite that reached by the post-conviction court. To the extent that Flagg argues he was deprived of a right of confrontation with respect to DNA results, he did not make or develop this claim before the post-conviction court. He may not do so now. *See Boesch v. State*, 778 N.E.2d 1276, 1281 (Ind. 2002) (clarifying that issues not raised in a post-conviction petition may not be raised for the first time on appeal and that "the fundamental error doctrine is not applicable in post-conviction proceedings.").

[27] Failure to Depose Child Victim. Finally, Flagg asserts that his trial counsel was deficient for failure to depose a nine-year-old witness, S.C. At trial, Lamonica testified that Flagg grabbed S.C., pointed a gun at him, and threatened to kill him if Lamonica refused to open the bedroom door she was hiding behind. According to Flagg, he "maintains that had trial counsel investigated the

criminal offense and talked with the nine-year-old boy, or taken that minor's deposition, the boy would have denied that [Flagg] was the person who grabbed and threatened to kill him the night of the offense." Appellant's Brief at 29-30.

[28] Flagg's co-counsel conceded at the post-conviction hearing that she and the lead counsel did not depose the child but were aware that S.C. had "said no gun was pointed at him." (P-C.R. Tr. Vol. I, pg. 110.) She testified that she and the lead counsel were unwilling to call any of the young children as witnesses, considering the State's decision to present testimony from the eldest child victim, a thirteen-year-old. Co-counsel opined that "the jury didn't want to hear more kids" and it was "too prejudicial." (P.C-R. Tr. Vol. I, pg. 114.)

[29] Counsel has a duty to make reasonable investigations, but a petitioner cannot prevail upon a claim of ineffectiveness for failure to investigate witnesses or issues unless he can show that the outcome of his case "would likely have been different had counsel further investigated." *Boesch*, 778 N.E.2d at 1284. Here, Flagg asserts that S.C. would have contradicted his aunt Lamonica's identification of Flagg, but this appears to be speculative. At the post-conviction hearing, no testimony or affidavit was submitted to establish what identification testimony S.C. might have provided. Flagg has not met his burden of proof.

# Conclusion

[30] Flagg has not established that he was denied the effective assistance of trial counsel. The post-conviction court did not clearly err in denying Flagg post-conviction relief.

[31] Affirmed.

Crone, J., and Brown, J., concur.