## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 15 2020, 7:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph G. Hiles,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 15, 2020

Court of Appeals Case No.
19A-CR-745

Appeal from the Cass Superior Court

The Honorable Richard A. Maughmer, Judge

Trial Court Cause No.
09D02-1812-F5-80

**Mathias, Judge.**

[1] Following a jury trial, Joseph Hiles ("Hiles") was convicted in the Cass Superior Court of two counts of Level 6 felony intimidation and one count of

Class A misdemeanor invasion of privacy. Hiles was found to be an habitual offender and sentenced to nine years in the Department of Correction ("DOC"). He presents two issues for our review: (1) whether the trial court committed fundamental error by failing to instruct the jury on the constitutional right to free speech that is implicated in the intimidation offense; and (2) whether the consecutive sentences for the Level 6 felonies exceeded what is permitted by statute.

[2] We affirm in part, reverse in part, and remand for resentencing.

## Facts and Procedural History

[3] At the time of the events giving rise to this matter, Hiles and his wife Kylee Hiles ("Kylee") were separated and a protective order barred Hiles from harassing, annoying, contacting, or directly or indirectly communicating with Kylee. Ex. Vol., State's Ex. 1. Hiles, however, regularly stayed at Kylee's residence in Cass County, where she lived with their six-year-old child, J.H., as the two attempted to improve their relationship. Such was the case on December 12, 2018. That night, after an argument erupted between Hiles and Kylee while J.H. slept upstairs, Kylee fled the home and walked to her mother's residence nearby. Hiles subsequently left Kylee's home with J.H.

[4] Shortly thereafter, Kylee returned to her home and discovered that J.H. and Hiles were gone. She called the Cass County Sheriff's Department to report J.H. missing, and Deputy Nicolas Bowyer ("Deputy Bowyer") responded. The Indiana State Police were dispatched to Hiles's mother's home in Miami

County, where Kylee suspected Hiles might be. Hiles and J.H. were indeed located in Miami County that night, J.H. was returned to Kylee's care, and Hiles was arrested for violating the terms of the protective order.

[5] From the time of his arrest to the time Hiles was booked into the Cass County jail in the early hours of December 13, 2018, Hiles's behavior was belligerent, obscene, and threatening. He was combative and verbally abusive to officers during his arrest and needed to be transferred from one police vehicle to another that had a transport cage. Some of Hiles's threats and insults were directed at responding officers indiscriminately: he described "follow[ing] through on threats . . . before . . . and not [being] afraid to do it again." Tr. Vol. III, p. 8. Hiles threatened to "kill a pig" given the chance. Tr. Vol. III, pp. 10–11. His protestations during transport were such that Deputy Bowyer was unable to communicate with police dispatch via radio due to Hiles's yelling. Hiles also threatened Deputy Bowyer directly: he said he would rape and kill Deputy Bowyer's wife and children. Tr. Vol. II, p. 184. This particular threat was overheard by another officer on the dispatch radio. Hiles made the same and similar threats against Deputy Bowyer and his wife again when they arrived at the Cass County jail.

[6] At the jail, Corrections Officer Terry Dixson ("CO Dixson") was tasked with processing Hiles. Hiles put up little physical resistance, but based on Hiles's threats to Deputy Bowyer and the other officers present, CO Dixson decided to place Hiles in a padded cell and have him wear a garment designed to prevent the wearer from harming himself or others. Hiles continued to generally berate

and insult the officers. He threatened to "find out where [the officers] lived . . . so he can go ahead and take care of the business that he told [the officers] he was going to [do]." Tr. Vol. II, p. 214. He hurled verbal abuse at the young female corrections officer in charge. Hiles specifically threatened to rape Officer Dixson's wife and kill both upon his release. Tr. Vol. II, pp. 196, 218.

[7] The State charged Hiles with eight counts: Level 5 felony battery, three counts of Level 6 felony intimidation, Level 6 felony criminal confinement, two counts of Level 6 felony domestic battery, and Class A misdemeanor invasion of privacy. One count of Level 6 felony domestic battery was dismissed before Hiles's case went to trial. After a jury trial on February 6 and 7, 2019, Hiles was found guilty of two counts of Level 6 felony intimidation and one count of Class A misdemeanor invasion of privacy. Hiles admitted to and was found to be an habitual offender.

[8] A sentencing hearing was held on March 5, 2019. Hiles received a one-year sentence for the Class A misdemeanor and consecutive terms of two and one-half years for each Level 6 felony. The one-year sentence ran concurrent to the two-and-a-half-year sentences. The sentence was enhanced by four years due to Hiles's habitual offender status, resulting in an aggregate sentence of nine years executed. Hiles now appeals the Level 6 felony intimidation convictions on the grounds that the jury received an instruction that constituted fundamental error, and he appeals his sentence for exceeding what is permitted by statute.

## I. Jury Instructions

Hiles challenges the jury instructions for Level 6 felony intimidation as defective for failing to include discussion of the constitutional right to free speech that is implicated in the offense. The jury received identical instructions for each count of intimidation, the only difference being the names of the individuals affected. The instruction read in its entirety:

> The crime of intimidation is defined by law as follows:
>
> A person who communicates a threat to another person, with the intent that the other person be placed in fear of retaliation for a prior lawful act commits intimidation, a Class A misdemeanor. The offense is a Level 6 felony if the threat is to commit a forcible felony.
>
> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant, Joseph Gene Hiles
>
> 2. communicated a threat to [Deputy Bowyer/CO Dixson]
>
> 3. with the intent that [Deputy Bowyer/CO Dixson] be placed in fear of retaliation for a prior lawful act
>
> 4. and the threat was to commit a forcible felony.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of intimidation, a Level 6 felony, as charged in [Count 2/Count 3].

Appellant's App. pp. 97–98; *see* Ind. Code § 35-45-2-1.[1]

[10] Hiles did not object to the jury instruction or tender his own instruction; thus, he has waived the claim for our review unless the instruction constituted fundamental error. The fundamental error, Hiles argues, is that the instruction failed to include an explanation of the constitutional limitation on prosecuting threats of violence, and thus an essential element of the instruction was undefined. Appellant's Br. at 13. We disagree.

[11] A party believing an instruction contains error must identify the specific grounds for his objection at the time of trial to preserve such error for appeal. *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012). "Failure to object to a jury instruction results in waiver on appeal, unless giving the instruction was fundamental error." *Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000). Fundamental error is a narrow exception to the waiver rule and requires an appellant to show that the alleged error is so prejudicial as to make a fair trial impossible. *Castillo v. State*, 974 N.E.2d 458, 468 (Ind. 2012). Proving the "mere fact" that an error occurred and that it was prejudicial will not, therefore, satisfy the fundamental error standard. *Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007). Similarly, claiming that a constitutional right is implicated does not suffice. *Id.* The claimed error must "constitute [a] clearly blatant violation[] of basic and elementary principles of due process and [] present an undeniable and

---

[1] This section has since been amended by Pub. L. 66-2019 § 17, which took effect July 1, 2019. We cite to the version of the statute effective on the date Hiles committed the offense.

substantial potential for harm" so that "a fair trial [was] impossible." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).

[12] In considering a claim of fundamental error with respect to jury instructions, we look to the instructions as a whole to determine if they were adequate. *Munford v. State*, 923 N.E.2d 11, 14 (Ind. Ct. App. 2010). "When determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions." *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002) (internal citations omitted). When all information, as a whole, does not mislead the jury as to the correct understanding of the law, there is no due process violation. *Id.*

[13] The First Amendment to the United States Constitution and Article 1, Section 9 of the Indiana Constitution protect Hoosiers' speech and expressive rights. "True threats" of violence, however, are afforded no protection under the United States and Indiana constitutions. *Brewington v. State*, 7 N.E.3d 946, 953 (Ind. 2014). Indiana law defines a threat, in relevant part, as an expression, by words or action, of an intention to (1) unlawfully injure the person threatened or another person . . . ; (2) unlawfully subject a person to physical confinement or restraint; or (3) commit a crime. I.C. § 35-45-2-1(d). A threat is punishable if the speaker "intend[s] his communications to put his targets in fear for their safety, and [if] the communications were likely to actually cause such fear in a

reasonable person similarly situated to the target." *Brewington*, 7 N.E.3d at 964. Hiles takes issue with the trial court's failure to distinguish, as part of the jury instructions, the threats for which Hiles could properly be convicted of intimidation from his constitutionally protected speech.

[14]   Here, the intimidation instruction directed the jury to consider whether Hiles specifically threatened Deputy Bowyer and CO Dixson with a forcible felony, rape, intending to cause them to fear retaliation for their lawful actions. The jury heard testimony from both men about how they felt personally targeted by Hiles's threats to find them and their wives, rape them, and kill them, and how the threats were far more disturbing and fear-inducing than what Deputy Bowyer and CO Dixson ordinarily encounter in the course of their duties. The jury also heard testimony about Hiles's less egregious threats toward officers, that he would "find out where [they] lived" and "beat all of [them] up," for example. Tr. Vol. II, pp. 197, 214.

[15]   That the jury was not explicitly instructed on the constitutional difference between Hiles's specific threats of rape directed toward Deputy Bowyer and CO Dixson, and his numerous other threats of a more general nature, does not indicate that the jury was misinformed about whether Hiles communicated a threat, an essential element of the offense. "When determining whether an element of an offense has been proven, the jury may rely on its collective common sense and knowledge acquired through everyday experiences— indeed, that is precisely what is expected of a jury." *Clemons v. State*, 83 N.E.3d 104, 108 (Ind. Ct. App. 2017), *trans. denied*. The trial court has a duty to provide

further instructions defining words used in instructions only if those words have technical or legal meaning "normally not understood by jurors unversed in the law." *Id.* Based on the instructions provided, which identified by name the law enforcement officers against whom Hiles threatened retaliation, the jury could infer from common sense the difference between Hiles's threats of rape and his other speech that did not put specific officers in reasonable fear for their safety. Viewing the instructions and all relevant information presented to the jury, we cannot conclude that the trial court's failure to specify that true threats are unprotected by the United States and Indiana constitutions was a "substantial blatant violation of basic principles" amounting to fundamental error. *Moreland v. State*, 701 N.E.2d 288, 294 (Ind. Ct. App. 1998).

[16] Furthermore, any error in giving jury instructions is subject to a harmless error analysis. *Randolph v. State*, 802 N.E.2d 1008, 1011 (Ind. Ct. App. 2004), *trans. denied*. We have previously held that errors in the giving of instructions are harmless where a conviction is clearly sustained by the evidence, and the instruction would not likely have impacted the jury's verdict. *Id.* at 1013. The record here reveals that the State presented evidence of Hiles's threats going well beyond the typical verbal abuse that law enforcement officers hear in the course of their duties; therefore, the omission in the instructions of the constitutional "true threat" distinction would not have had an impact on the jury's verdict. If anything, such an instruction would have strengthened the State's case and highlighted how Hiles's threats to Deputy Bowyer and CO Dixson were outside the bounds of constitutionally protected speech as

compared to his other threats that would not cause officers to reasonably fear for their safety.

## II. Sentencing

[17] Hiles also argues that the trial court abused its discretion in imposing consecutive two-and-one-half-year sentences for each of his convictions for Level 6 felony intimidation. Appellant's Br. at 19. A trial court may impose consecutive sentences, but it must state its reason for doing so. And the aggregate length of consecutive sentences is limited by statute when they are not for crimes of violence and when they arise out of a single episode of criminal conduct. I.C. § 35-50-1-2(c). For non-violent Level 6 felony offenses arising out of one episode of criminal conduct, the statutory cap is four years. I.C. § 35-50-1-2(d). Intimidation is not a crime of violence under Indiana Code section 35-50-1-2(a), and thus Hiles's consecutive aggregate five-year sentence was proper only if the convictions did not arise from a single episode of criminal conduct.

[18] Hiles asserts that his offenses against Deputy Bowyer and CO Dixson arose from a single episode of criminal conduct, thereby rendering the court's order that he serve consecutive sentences an abuse of the court's discretion. Appellant's Br. at 20. Whether certain offenses constitute a single episode of criminal conduct is a fact-intensive inquiry to be determined by the trial court. *Slone v. State*, 11 N.E.3d 969, 972 (Ind. Ct. App. 2014). A single episode of criminal conduct is defined as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(b). The focus is on the timing of the offenses and the simultaneous and

contemporaneous nature, if any, of the crimes. *Williams v. State*, 891 N.E.2d 621, 631 (Ind. Ct. App. 2008). Our supreme court has described the ability to "recount each charge without referring to the other" as relevant, but not critical, in determining whether conduct constitutes a single episode of criminal conduct. *Reed v. State*, 856 N.E.2d 1189, 1200 (Ind. 2006). A series of occurrences and developments that can be viewed as distinctive may nevertheless be part of a larger or more comprehensive series of events, and thus may constitute a single episode of criminal conduct. *Johnican v. State*, 804 N.E.2d 211, 217 (Ind. Ct. App. 2004). And offenses against separate victims can be part of the same episode of criminal conduct. *Harris v. State*, 861 N.E.2d 1182, 1188 (Ind. 2007).

[19] The State's position on appeal is that Hiles's threat of rape to Deputy Bowyer during his transport to the jail was a separate episode of criminal conduct from his threat of rape to CO Dixson during his processing at the jail. We disagree, primarily because it is unclear from the record exactly which particular instances of Hiles's threats against Deputy Bowyer and CO Dixson were used to secure his convictions for intimidation of each man. We cannot say that the offenses were not committed contemporaneously, because Hiles threatened Deputy Bowyer with rape and murder on at least three occasions, both during transport to the jail and at the jail, at which time he made the same or similar threat against CO Dixson. The State failed to establish during trial, and the trial judge did not attempt to identify during sentencing, the separate timing of Hiles's offenses. Furthermore, the offenses were closely related in place: on the

way to the jail and at the jail. And finally, we can say with confidence that the offenses were closely related in circumstance. Hiles's distinct threats to Deputy Bowyer and CO Dixson were prompted by Hiles's displeasure at being subject to their authority and his desire to make the men fear Hiles's retaliation for their lawful actions. Thus, his threats are an example of occurrences that can indeed be viewed as distinct because they occurred against two different victims and possibly at different times and places, but that nevertheless fall within a larger course of criminal conduct because of the circumstance that connects them.

[20] Because the offenses were part of a single episode of criminal conduct, the trial court abused its discretion in imposing consecutive sentences for Hiles's Level 6 felony intimidation convictions that resulted in an aggregate five-year sentence. The aggregate five-year sentence impermissibly exceeded the cap for non-violent offenses arising out of a single episode of criminal conduct created by Indiana Code section 35-50-1-2(d), and thus we reverse and remand for resentencing.

## Conclusion

[21] Hiles has not demonstrated any prejudice to his substantial rights as a result of instructional error pertaining to the distinction between constitutionally protected and unprotected speech, and thus we conclude that any error was not fundamental error requiring reversal. The trial court did err in its sentencing of Hiles for two counts of intimidation that were part of the same episode of criminal conduct. For all of these reasons, we reverse the trial court's decision on this point and remand for resentencing.

Affirmed in part, reversed in part, and remanded for resentencing.

Robb, J., and Pyle, J., concur.