# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 17 2018, 6:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Stephanie R. Thompson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 17, 2018 <br><br> Court of Appeals Case No. 18A-CR-735 <br><br> Appeal from the Franklin Circuit Court <br><br> The Honorable J. Steven Cox, Judge <br><br> Trial Court Cause No. 24C01-1702-F3-124 |

**Najam, Judge.**

# Statement of the Case

Stephanie R. Thompson appeals her conviction and sentence for robbery, as a Level 3 felony, following a jury trial. She raises three issues for our review, which we revise and restate as the following four issues:

1.  Whether the State presented sufficient evidence to support her conviction.

2.  Whether the trial court committed fundamental error when it instructed the jury.

3.  Whether the trial court abused its discretion when it sentenced her.

4.  Whether her sentence is inappropriate in light of the nature of the offense and her character.

We affirm.

# Facts and Procedural History

On the night of January 28, 2017, Tanner Roberts was hanging out at his house with Olivia Smith and Marisa Keyser. The three teenagers were playing games and smoking marijuana. At one point late that night, Smith took a picture of Roberts and posted it online, where all of her online friends could view it. The picture was of Roberts "flashing" his chain, his watch, and between eight hundred and one thousand dollars in cash. Tr. Vol. 2 at 247.

In the early morning hours of January 29, Thompson, who was friends with Smith online and who knew Roberts, sent a text message to Roberts. Through

a series of text messages and phone calls, Roberts and Thompson arranged to meet in a parking lot near Roberts' home so that Roberts could sell some marijuana to Thompson. The two agreed that, once in the parking lot, Thompson would get into Roberts' car. After Roberts and Thompson arranged the meeting, Roberts, Smith, and Keyser all drove in Roberts' vehicle to the designated parking lot. Approximately five minutes later, Thompson arrived and parked next to Roberts' car. Once Thompson arrived, Roberts called her cell phone. Thompson then informed Roberts that she would not get into his car, so Roberts agreed to get into her car instead. Smith and Keyser remained in Roberts' car. When Roberts got into the front passenger seat of Thompson's car, he did not see anyone other than Thompson in the car.

[5] Once in her car, Roberts gave Thompson a marijuana joint. Thompson then stated that she wanted to go for a drive, so Thompson and Roberts left the parking lot in Thompson's car. Shortly after they left, "a guy from the back seat" of Thompson's car sat up, "wrapped [Roberts] up and put [him] in a headlock and put a gun to [his] head." Tr. Vol. 3 at 94. Thompson told Roberts to give her his cell phone, and she reached into the pocket of his pants to take his wallet. Thompson then told Roberts that her boyfriend would "come after" Roberts and kill him if he reported the incident to anyone. *Id*. at 96. At that point, Thompson stopped the car and told Roberts to get out. Roberts ran back to his car and told Smith and Keyser what had happened. The three individuals initially decided that they would not report the incident to

police because they feared that they would get into trouble for selling marijuana. However, Roberts ultimately reported the robbery.

[6] The State charged Thompson with robbery, as a Level 3 felony. The trial court held a jury trial on January 29 and 30, 2018. After the parties presented their closing arguments, the trial court instructed the jury on the use of a deadly weapon without objection from Thompson. The jury found Thompson guilty as charged, and the trial court entered judgment of conviction accordingly. During the sentencing hearing, the trial court identified as aggravating factors the fact that Thompson had a plan to isolate Roberts and Thompson's past failure to perform well on probation. The trial court also identified Thompson's criminal history as an aggravating factor, although the court noted that her prior history only includes misdemeanor offenses. And the trial court found as mitigating circumstances the fact that Thompson had "resolved the probation issues"[1] and that she is only a moderate risk to reoffend. Tr. Vol. 4 at 54. The trial court then sentenced Thompson to eleven years, with nine years executed in the Department of Correction and two years suspended to probation. This appeal ensued.

---

[1] The record does not provide any information regarding the circumstances surrounding Thompson's probation violation or its apparent resolution. The presentence investigation report indicates that the State filed a "Petition of Probation Violation" after Thompson had been placed on probation following her conviction for possession of marijuana and visiting a common nuisance. Appellant's App. Vol. 3 at 6. But, during the sentencing hearing, Thompson stated that she "ha[d] resolved the probation violation[.]" Tr. Vol. 4 at 53.

## Discussion and Decision

### *Issue One: Sufficiency of the Evidence*

[7] Thompson contends that the State presented insufficient evidence to support her conviction. We initially note that Thompson raised this issue for the first time in her reply brief. Indiana Appellate Rule 46(C) provides that "[n]o new issues shall be raised in the reply brief." And Thompson concedes that "[m]ost issues raised in a reply brief for the first time are waived." Reply Br. at 8. Nonetheless, she contends that "appellate courts have addressed sufficiency if the waiver did not substantially impede the court's review of the record." *Id.*

[8] To support her contention, Thompson relies on *Ward v. State*, 567 N.E.2d 85 (Ind. 1991). In that case, our Supreme Court noted that, generally, "[a] reply brief may not present new theories of appeal." *Id.* at 85. However, that Court went on to state that, waiver notwithstanding, we may review the issue if noncompliance with the appellate rules does not impede our review of the issue. *See id.* at 86. Accordingly, our appellate courts have "on occasion reviewed the issue of sufficiency of evidence even absent proper presentation of the question on appeal." *Id.*

[9] "It is true that an Indiana appellate court *can* consider a claim even when the issue is not properly raised in an initial brief." *Hopping v. State*, 637 N.E.2d 1294, 1297 (Ind. 1994). "However, it is clear that no appellate court in Indiana is *required* to consider such claims." *Id.* But, here, both Thompson and the State discussed the evidence that had been presented at trial in their respective

briefs. Accordingly, we agree with Thompson that her noncompliance with the appellate rules does not impede our review. *See Ward*, 567 N.E.2d at 86. Further, we prefer to resolve cases on the merits instead of on procedural grounds like waiver whenever possible. *See Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015). We will therefore exercise our discretion and address on its merits Thompson's claim that the State presented insufficient evidence to support her conviction.

[10] In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the conviction, neither reweighing the evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm the judgment unless no reasonable fact-finder could find the defendant guilty. *Id.*

[11] Thompson maintains that the State did not present sufficient evidence to support her conviction for robbery. To convict Thompson of robbery, as a Level 3 felony, the State was required to prove that Thompson had knowingly or intentionally taken property from Roberts by using or threatening the use of force while armed with a deadly weapon. Ind. Code § 35-42-5-1(a) (2018). On appeal, Thompson only contends that the State failed to present sufficient evidence that her accomplice had used a gun during the commission of the robbery.

[12] But the evidence most favorable to the conviction shows that Roberts testified that he was "positive" that the object that the man had put to his head was a

gun.  Tr. Vol. 3 at 97.  And, while he testified that he did not see the trigger, the hammer, or the handle, he also testified that he saw the barrel.  Thus, Thompson's argument on appeal is simply a request that we reweigh the evidence, which we cannot do.  *See Griffith*, 59 N.E.3d at 958.  Accordingly, we hold that the State presented sufficient evidence to demonstrate that Thompson's accomplice had used a gun during the robbery.

### *Issue Two:  Jury Instruction*

[13]     Thompson next contends that the trial court erred when it instructed the jury.  Thompson concedes that she did not object to the jury instructions during trial.  Therefore, Thompson argues that the purportedly erroneous instruction amounts to fundamental error.  Our Supreme Court has set out the applicable standard of review as follows:

> Because instructing the jury is a matter within the sound discretion of the trial court, we will reverse a trial court's decision to tender or reject a jury instruction only if there is an abuse of that discretion.  *Washington v. State*, 997 N.E.2d 342, 345 (Ind. 2013).  We determine whether the instruction states the law correctly, whether it is supported by record evidence, and whether its substance is covered by other instructions.  *Id.* at 345-46.  "Jury instructions are to be considered as a whole and in reference to each other; error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case."  *Whitney v. State*, 750 N.E.2d 342, 344 (Ind. 2001) (quoting *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind. 1996)).
>
> Where, as here, the defendant failed to preserve an alleged instructional defect, the objection is waived, and reversal is

warranted only in instances of fundamental error. *Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000). "Error is fundamental if it is 'a substantial blatant violation of basic principles' and where, if not corrected, it would deny a defendant fundamental due process." *Id.* (quoting *Brown v. State*, 691 N.E.2d 438, 444 (Ind. 1998)). This exception to the general rule requiring a contemporaneous objection is narrow, providing relief only in "egregious circumstances" that made a fair trial impossible. *Halliburton v. State*, 1 N.E.3d 670, 678 (Ind. 2013).

*Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016).

[14] On appeal, Thompson contends that the jury instruction regarding the use of a deadly weapon was given in error. That particular instruction read as follows:

> The term deadly weapon is defined by law as meaning a loaded or unloaded firearm, readily capable of causing serious bodily injury and used in the commission or attempted commission of a crime.

> Under Indiana law, the State is not required to introduce the weapon into evidence at trial to prove that it was used in the commission of a crime.

> But the State is required to produce some proof that the Defendant or her accomplice was actually armed with a deadly weapon at the time of the crime.

> It is not enough to allege [that the] victim merely feared that the Defendant or her accomplice was armed with a deadly weapon.

> However, the testimony of a witness that he or she saw the Defendant or her accomplice use what was believed to be a gun, can by itself be sufficient proof of the use of the weapon in the

commission of a crime. The State is required to prove the element of deadly weapon beyond a reasonable doubt.

Tr. Vol. 4 at 12-13.

[15] Thompson asserts that the trial court erred when it gave that instruction because the instruction "highlighted evidence favorable to the State," "restricted the jury's determination of the law and facts," and because it "was confusing." Appellant's Br. at 12. In essence, Thompson contends that the instruction on the use of a deadly weapon was given in error because "the instruction erroneously took the issue" from the fact finder and invaded the province of the jury. *Id*. at 16.

[16] In support of her assertion, Thompson asserts that the jury instruction at issue in the present case is substantially similar to a jury instruction that the Indiana Supreme Court determined to be erroneous in *Ludy v. State*, 784 N.E.2d 459 (Ind. 2003). In *Ludy*, our Supreme Court considered the following jury instruction: "A conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." *Id*. at 460. In that case, the Court held that the giving of that instruction was erroneous because it unfairly focused the jury's attention on and highlighted the testimony of a single witness, it presented a concept used in appellate review that is irrelevant to a jury's function as a fact-finder, and its use of the technical term "uncorroborated" may have misled or confused the jury. *See id*. at 461.

[17]     But even if we agreed with Thompson that the instruction in the present case is substantially similar to the erroneous instruction in *Ludy*, the rule in *Ludy* applies only to individuals "whose cases properly preserved the issue[.]" *Id.* at 462. And there is no dispute that Thompson did not properly preserve this issue for appeal. Further, even if the trial court's instruction were erroneous, we cannot say that any potential error amounted to fundamental error.

[18]     It is well settled that,

> [w]hen determining whether a defendant suffered a due process violation based on an incorrect jury instruction, we look not to the erroneous instruction in isolation, but in the context of all relevant information given to the jury, including closing argument, and other instructions. There is no resulting due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law.

*Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002) (citations omitted).

[19]     Thompson contends that the court's instruction of the jury on the use of a deadly weapon amounted to fundamental error because the "jurors should have also considered the witness' limited view of the alleged weapon[.]" Appellant's Br. at 12. But there is no evidence in the record to suggest that the jurors did not consider the fact that Roberts only saw the barrel of the gun. Indeed, Thompson questioned Roberts about his observation of the gun. And Roberts testified that he did not see the trigger, the hammer, or the handle of the gun. Roberts also testified that, while he believed it was a gun, he did not know how

to tell for certain whether it was a real gun. Further, during Thompson's closing arguments, Thompson reiterated that the only evidence that the State presented to demonstrate that a firearm was used during the robbery was Roberts' testimony, which included Roberts' testimony that he did not know for certain whether it was a real gun.

[20] Thompson also asserts that the trial court's instructions amounted to fundamental error because the instruction was "misleading and confusing." Appellant's Br. at 13. Specifically, she maintains that "the trial court implied that a toy or fake gun will constitute the deadly weapon at issue in this case[.]" *Id*. But the trial court also specifically and correctly instructed the jury that "[t]he term deadly weapon is defined by law as meaning a loaded or unloaded firearm, readily capable of causing serious bodily injury and used in the commission or attempted commission of a crime." Tr. Vol. 4 at 12. And the trial court instructed the jury that it is "not enough to allege [that the] victim merely feared that the Defendant or her accomplice was armed with a deadly weapon," but that "the State is required to produce some proof that that the Defendant or her accomplice was actually armed with a deadly weapon at the time of the crime." *Id*. Thus, when viewed as a whole, the trial court's instructions are not misleading or confusing

[21] Our review of the record in its entirety demonstrates that the trial court instructed the jury on all of the elements of the charged offenses, the State's burden of proof, and the jury's role in assessing the credibility of the witnesses. Indeed, the trial court instructed the jury that the State must prove that

Thompson knowingly or intentionally took the property of another person by using or threatening the use of force with a deadly weapon. And the court provided multiple different instructions to the jury that the burden was on the State, and that the State had to prove each element of the offense beyond a reasonable doubt. Further, the court instructed the jury several times that it was the jury's responsibility to determine the facts from the evidence presented. As such, we cannot say that the trial court committed fundamental error when it instructed the jury.

### Issue Three: Abuse of Discretion in Sentencing

[22] Thompson next contends that the trial court abused its discretion when it sentenced her. Sentencing decisions lie within the sound discretion of the trial court. *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Gross v. State*, 22 N.E.3d 863, 869 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*.

[23] A trial court abuses its discretion in sentencing if it does any of the following:

> (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law."

*Id.* (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490-491 (Ind.), *clarified on reh'g other grounds*, 875 N.E.2d 218 (2007)).  However, "'if the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist.'"  *Anglemyer*, 868 N.E.2d at 493 (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)).

[24]    Here, Thompson contends that the trial court abused its discretion when it failed to identify her young age as a mitigating circumstance.[2]  In essence, Thompson contends that the trial court abused its discretion when it sentenced her because it omitted a mitigating factor that was clearly supported by the record and advanced for consideration.  But the trial court was not obligated to explain why it found that that particular mitigating factor does not exist.  *See Angelmyer*, 868 N.E.2d at 493.  Accordingly, we cannot say that the trial court abused its discretion when it failed to identify her youth as a mitigating factor.[3]

---

[2]  The State contends that Thompson has waived this issue because "she did not specifically request the trial court to find her age as a mitigating circumstance."  Appellee's Br. at 17.  Specifically, the State asserts that Thompson only made a "passing assertion" to her youth, which she did not make during her argument on mitigators and aggravators.  *Id.* at 18.  And the State maintains that that passing assertion "is insufficient to preserve a claim that the trial court failed to consider a significant mitigating circumstance."  *Id.*  But during her argument regarding her recommended sentence, Thompson asserted that "[s]he has resolved the probation violation . . . .  She was previously employed.  She is a young lady.  She would like to be able to move forward with her life."  Tr. Vol. 4 at 53.  As such, Thompson informed the trial court of her young age and argued that her age was a factor that supported her requested sentence.  Thompson has therefore not waived this issue.

[3]  In her reply brief, Thompson contends that, even if she did not explicitly argue youth as a mitigating factor to the trial court, that factor "should be considered an inherent consideration in sentencing" because the trial court is inherently aware of a defendant's age.  Reply Br. at 9.  But because Thompson proffered her youth to

## *Issue Four: Inappropriateness of Sentence*

[25] Thompson also contends that her sentence is inappropriate in light of the nature of the offense and her character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." This court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has recently reiterated that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. [*Anglemyer*, 868 N.E.2d at 494].

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[26] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of

the trial court as a mitigating factor, we need not consider her assertion that a trial court has a responsibility to consider her young age regardless of whether she argued that mitigator at trial.

the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[27] Thompson was convicted of robbery, as a Level 3 felony. The sentencing range for a Level 3 felony is three years to sixteen years, with an advisory sentence of nine years. I.C. § 35-50-2-5(b). Here, the trial court identified as mitigating factors the fact that Thompson had resolved her probation issues and that she is only a moderate risk to reoffend. And the trial court identified the following aggravating factors: Thompson's criminal history, but the court noted that her prior record only contains misdemeanor convictions; the fact that Thompson had failed to perform well on probation; and the fact that Thompson had a method and plan to lure Roberts away from his car and potential witnesses. Accordingly, the trial court sentenced Thompson to a term of eleven years, with nine years executed in the Department of Correction and two years suspended to probation.

[28] Thompson maintains that her sentence is inappropriate in light of the nature of the offense because the incident took "just minutes" and because they let

Roberts go. Appellant's Br. at 21. She further contends that her sentence is inappropriate because "they did not physically hurt [Roberts] in any way." *Id*. Be that as it may, the evidence shows that Thompson and another person devised a plan to rob Roberts after they had seen a picture online of Roberts holding a lot of money. The evidence further shows that, once Thompson and the other individual arrived at the parking lot, Thompson declined to get into Roberts' car, and, instead, convinced Roberts to get into her car so that they could execute the robbery away from potential witnesses. Further, Thompson threatened Roberts that her boyfriend would kill him if he reported the crime. We cannot say that Thompson's sentence is inappropriate in light of the nature of the offense.

[29] Thompson also contends that her sentence is inappropriate in light of her character because she was young, because she had a job, and because "this was her first felony or violent offense[.]" Appellant's Br. at 19. But Thompson has not provided compelling evidence portraying her character in a positive light. Thompson was only nineteen years old at the time she committed the instant offense. But despite her young age, as of the date of the sentencing hearing, Thompson had already been adjudicated a juvenile delinquent for visiting a common nuisance. And, as an adult, she had already been convicted of possession of marijuana, visiting a common nuisance, and the instant robbery charge. Additionally, she has failed to perform well on probation. As such, we cannot say that Thompson's sentence is inappropriate in light of her character.

### *Conclusion*

In sum, we hold that the State presented sufficient evidence to demonstrate that Thompson's accomplice used a gun during the commission of the robbery. And the trial court did not commit fundamental error when it instructed the jury. We further hold that the trial court did not abuse its discretion when it failed to identify Thompson's youth as a mitigating factor, and Thompson's sentence is not inappropriate in light of the nature of the offense and her character. We therefore affirm Thompson's conviction and sentence.

Affirmed.

Pyle, J., and Altice, J., concur.